UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAWANO GUN & LOAN, LLC
d/b/a SHAWANO GUN & LOAN,

Petitioner,

v.                                                           Case No. 09-C-150

MARY JO HUGHES, Director of Industry
Operations, Bureau of Alcohol, Tobacco,
Firearms and Explosives,

Respondent.

## MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION
## FOR SUMMARY JUDGMENT

Petitioner, Shawano Gun & Loan, LLC (hereinafter "Shawano" or "Licensee") brings this

action seeking a *de novo* review of the Bureau of Alcohol, Tobacco, Firearms, and Explosives'

(hereinafter "ATF") decision to revoke its federal firearm license.  The Gun Control Act of 1968, 18

U.S.C. §§ 921 et. seq. ("GCA"), specifically 18 U.S.C. § 923(f)(3), governs this Court's review of

ATF's decision.

I.        BACKGROUND

In 1998, ATF issued a federal firearms license (License No. 3-39-115-02-4H-37346) to

Timothy Backes as a sole proprietor of Shawano as a dealer in firearms other than destructive

devices.  PFF 1.[1]  On July15, 1998, as part of the 1998 federal firearms license application and

---

[1]PFF followed by a number refers to the Respondent's numbered Proposed Findings of
Fact.

licensing process, an application inspection was conducted by ATF Inspector James Jewell[2] with Timothy Backes as sole proprietor of Shawano.  PFF 2.  As a part of the application inspection, ATF Inspector James Jewell completed a document dated July 20, 1998, that includes a summary of the application inspection along with a section entitled, "STATEMENT OF FACTS."  PFF 3.

ATF Inspector James Jewell states, in part, the following in the document dated July 20, 1998:

> I completed an original application inspection with Mr. Timothy Backes, Sole-Proprietor.  Also present at the inspection was John Anderson of Wausau Gun and Pawn.  Mr. Anderson is the property owner and advisor to Mr. Backes.  A copy of the lease agreement was obtained during the inspection.  The proposed place of business is currently a bar which will be re-modeled into a retail store . . .
>
> I completed a review of the record keeping requirements per the "Firearms Application Inspection Workplan," including completion of the "Firearms Regulation Review" worksheet.  I completed an extensive review of the records required for a pawnbroker.
>
> Mr. Backes's business intentions are to establish a pawnshop.  Mr. Anderson will be advising Mr. Backes concerning all aspects of the business.  Some of the start-up inventory will be purchased from Mr. Anderson.
>
> I advised Mr. Backes of the Wisconsin requirements for the background check and 48 hr. waiting period for the sale of handguns, and the pending NICS checks for long guns.  I also advised Mr. Backes of the requirements for additional background checks for redemption of firearms.  Additionally, Mr. Backes will obtain a Wisconsin Seller's Permit for payment of sales tax.

PFF 4. As a part of the application inspection, Timothy Backes affixed his signature above a signature line for the applicant on a document entitled, "FIREARMS REGULATION REVIEW" attesting to the following language on that form: "On this date 7-15-98, I agree the above information

---

[2]The current title for this position is "Industry Operations Investigator."

Case 2:09-cv-00150-WCG   Filed 01/21/10   Page 2 of 31   Document 22

was thoroughly explained to me by an ATF Inspector and any questions regarding the above information have been answered to my satisfaction. I have received a copy of this document for my records." PFF 5.

The GCA and its implementing regulations contain various record keeping requirements for firearms dealers. The general record keeping provisions of the GCA are located at 18 U.S.C. § 923(g) and its implementing regulations at 27 C.F.R. Part 478 (formerly Part 178). Of these requirements, two are particularly relevant to this case.

First, dealers must ensure that a Firearm's Transaction Record, ATF Form 4473, is properly completed to record identifying information about gun purchasers, to prohibit gun transfers to persons prohibited from possessing firearms, and to facilitate tracing guns that are involved in crimes. A prospective transferee of a firearm must complete Sections A and C of the form to disclose various identifying information[3] and to answer questions that inform the dealer whether it can legally transfer the firearm to the prospective transferee.[4] The dealer must then complete Sections B and D and provide further details about the firearm(s) being transferred, including the dealer's National Instant

_____

[3] In Section A, the transferee must identify his/her full name, residence address, place of birth, height, weight, sex, race, birth date, state of residence, country of citizenship, and, if applicable, the US-issued alien number or admission number. In Section C, the transferee must re-certify the information in Section A if the transfer of the firearm takes place on a date different from the date the transferee signed Section A. (See ATF Forms 4473, Exhs. Gx- 27 through 53, 55-58).

[4] The transferee answers these questions in Section A, Certification of Transferee (See ATF Form 4473, Exhs. Gx-57-58, Section A, Nos. 11a-L, 12-15). Under the GCA, it is unlawful for dealers to transfer guns to persons who they know or have reasonable cause to believe fall within various categories, such as those under indictment for or convicted of a crime punishable by imprisonment for more than one year, illegal aliens, and those convicted of a misdemeanor crime of domestic violence. *See* 18 U.S.C. § 922(d)(1)-(9).

3

Criminal Background Check System ("NICS")[5] check on the transferee, and the transferee's identifying documentation. In Wisconsin, the NICS check for handguns is conducted through the Wisconsin Department of Justice while the NICS check for long guns is conducted directly through NICS. *See generally* 18 U.S.C. § 923(g)(1)(A); 18 U.S.C. § 922(m); 18 U.S.C. § 922(t); 27 C.F.R. § 478.124; 27 C.F.R. § 478.102; and 28 C.F.R., Part 25.

Critically, Section D of the form requires identification of the specific firearm(s) to be transferred and a certification by the person making the transfer that "it is my belief [based upon information disclosed in the form] that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s) described below to the person identified in Section A." *See* 27 C.F.R. § 178.124(a)(5). A dealer who transfers a firearm based upon an incomplete Form 4473, or one the dealer knows to contain false statements, or has reasonable cause to believe contains false statements, violates the GCA and regulations. 18 U.S.C. §§ 922(m), 924(a)(1)(A), and 27 C.F.R. §§ 478.124(a) and (c), and 478.125(e).

Second, each licensed firearm dealer must maintain a bound book identifying each firearm placed into and taken out of its inventory. This book is referred to as the "Acquisition and Disposition Bound Book," "A&D Bound Book," or "A&D Record." Acquisition entries in the A&D Record must identify the gun by manufacturer, model, serial number, type, and caliber or gauge, identify the date the licensee receives the gun, and identify the person who transferred the gun to the dealer. The licensee must record these entries by the close of the business day following the

---

[5]*See* 18 U.S.C. § 922(t); 27 C.F.R. § 478.11 (definitions); 27 C.F.R. § 478.102.

4

acquisition.[6]  Disposition entries must include the date the gun was transferred out of the licensee's inventory, the identity of the person to whom the gun was transferred, and the address of that person on the Form 4473 serial number associated with the transfer.[7]  The licensee must record these disposition entries at the time of the sale or other transfer of the firearm – but may delay recording the disposition information for a period of seven days if the Form 4473 is readily available for inspection.  *See generally* 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.125(e) & (g).

A licensee may apply for a variance to the A&D Record to use an alternative format from the format imposed by 27 C.F.R. § 478.125(e).  Such approval to use an alternative format requires, in pertinent part, the following: 1) that all of the information required by 27 C.F.R. § 478.125(e) be contained in the computer A&D Record by date of acquisition;  2) that the licensee must be able to query the computer by serial number and acquisition date of firearm; 3) the licensee must have an acceptable daily memory backup system, such as disk or tape; 4) the licensee must prepare a printout of all A&D records at least semi-annually, upon request of an ATF officer, when the system memory is purged and when the business is discontinued; 5) the computer printout must contain all firearms in inventory as well as all those sold during the period covered, sequentially by date of acquisition; and 6) the computer printout must record both the manufacturer and the importer for all foreign made firearms.  (See Exh. Gx-54, pp. 193-194).

_____

[6]The licensee may record the acquisition within seven (7) days of receipt if it has a commercial record containing all information required by 27 C.F.R. § 478.125(g).

[7]Transfers to other federal firearm's licensees require the federal license number be placed in the disposition entry in lieu of the Form 4473 serial number.  *See* 27 C.F.R. § 478.125(e).

5

ATF inspectors conduct compliance inspections in order to review the licensee's records and inventory to determine whether the licensee is complying with the GCA's requirements. *See* 18 U.S.C. § 923(g)(1)(B); 27 C.F.R. § 478.23.

### A.     1999 Compliance Inspection

In December 1999, ATF Special Operations Inspector ("SOI") John Moore conducted the first compliance inspection of Shawano. PFF 6. The compliance inspection disclosed nine violations as follows:

a). Failure to ensure accurate completion of ATF Forms 4473. Errors include the failure to complete section A of the forms at the time of initial firearms disposition, the use of "N" and "Y" in section 9, the failure to complete section C recertification after transaction delays, and the use of outdated photocopied forms.

b). Failure to maintain completed ATF Forms 4473 in alphabetical, chronological, or numerical order. Failure to maintain at least two forms representing completed transactions.

c). Irreconcilable differences exist regarding two firearms dispositioned on ATF Form 4473, C-044.

d). Failure to maintain the A/D book record for the period of 8/04/99 to 12/01/99. A computerized record was maintained without first obtaining a variance approval.

e). Failure to timely record disposition entries in at least 145 instances.

f). Failure to timely record acquisition entries in at least three instances. This is evidenced particularly during firearm returns.

g). Completed the A/D book disposition entry when the firearm had not been transferred.

6

h).  Failure to record acquisition and disposition information regarding a Browning pistol, serial # 340383.  This firearm was reportedly taken into the personal collection of owner Timothy Backus [sic] sometime between 8/01/98 and 12/01/99.

i).  Failure to properly record firearm model and serial numbers into the A/D book in at least 23 instances.

PFF 7.  On December 21, 1999, Timothy Backes signed as owner of Shawano an ATF Inspection Report Copy attesting to the fact that he received a copy of the report of violations.  PFF 8.  The ATF Inspection Report Copy sets forth the nine violations and the corrective action to be taken. PFF 9.

In the summary document of the first compliance inspection dated January 20, 2000, SOI Moore states, in part, "[p]roper form [4473] completion of initial section A submission with section C recertification was demonstrated to Mr. Backus [sic]."  PFF 10.

After the 1999 compliance inspection, owner Timothy Backes submitted a variance request on or about December 15, 2001, and the request was approved by ATF on January 28, 2002, which allowed Mr. Backes to utilize a computerized record system.  PFF 11.  The January 29, 2002, approval letter states that the approval has the following stipulations, including, "You must prepare a printout of all A&D records: a.  at least semi-annually; b.  upon request of an ATF officer; c.  when the system memory is purged; d.  when the business is discontinued."  PFF 12.

**B.  2004 Compliance Inspection**

In June 2004, ATF Inspector Casimir Mleczko conducted a second compliance inspection of Shawano.  PFF 13.  The second compliance inspection disclosed six violations as follows:

a).  Licensee [Timothy Backes] completed Forms 4473 and transferred 11 firearms at a tavern in Shawano, Wisconsin, on 11/14/03.  The occasion was a raffle or give-away of firearms by

7

the tavern and did not qualify as an "event" under the applicable Code of Federal Regulations.

b). Licensee [Timothy Backes] failed to provide non licensees with written notification upon the transfer of handguns and failed to display a sign (ATF I 5300.2) required by this section [the Youth Handgun Safety Act].

c). On 7 instances, licensee [Timothy Backes] transferred a firearm to an individual that licensee had reason to believe was prohibited. Specifically, these individuals answered "yes" to a question in items 12(b) through 12(l) of Form 4473.

d). Licensee [Timothy Backes] failed to ensure the proper execution of Form 4473. Forms 4473 were found with improper (P.O. Box) or incomplete address in item 2. Blank answers to questions in item 12 were accepted on two Forms. 18 Forms 4473 were found with missing or improper identification (Tribal ID cards). 18 Forms 4473 had missing information relating to NICS/State background check such as date, transaction number or response. In 17 instances, Forms 4473 were signed/dated either prior to or after the actual date of transfer of a firearm. In item 12 of Form 4473, "Y" or "N" was accepted as opposed to the required "Yes" or "No."

e). Licensee [Timothy Backes] failed to maintain an accurate record of receipt and disposition. An inaccurate firearm model or serial number was found recorded in 36 instances. Licensee failed to make timely entries or made inaccurate entries in 10 instances. One firearm, a Harrington Richardson Trapper .22 cal. Revolver s/n 146234, could not be accounted for.

8

f). Licensee [Timothy Backes] failed to comply with a requirement of his ATF approved computer variance to make a semi-annual hard copy print of his computer receipt/disposition record. At the time of the inspection, the hard copy print was dated 4/11/03. PFF 14.

During the 2004 second compliance inspection, Timothy Backes was present and interviewed during the course of the inspection along with Scott Backes, identified as the manager of Shawano. PFF 15. A closing conference was held on July 14, 2004, with Inspector Mleczko and Timothy Backes where inspection findings were reviewed and a Report of Violations was issued along with a review of the Federal Firearms Regulations with Mr. Backes receiving a copy of the review. PFF 16. At the closing conference, Inspector Mleczko discussed "straw purchases" with Timothy Backes, Scott Backes, and an employee and earlier provided the NSSF [National Shooting Sports Foundation] pamphlet "Don't Lie for the Other Guy." The Inspector cautioned all to review Forms 4473 for completeness and not to transfer any firearm where the buyer indicates they are prohibited. PFF 17.

On July 14, 2004, Timothy Backes signed as owner of Shawano an ATF Report of Violations attesting to the fact that he received a copy of the report of violations. PFF 18. The ATF Report of Violations sets forth the six violations and the corrective action to be taken. PFF 19.

As to the various violations found during the second compliance inspection, Inspector Mleczko states in a document dated September 1, 2004, that he did the following:

a). Advised Timothy Backes that the business of transferring firearms, completing Forms 4473 and background checks must take place at his licensed premises, or gun show or "event;"

9

b). Pertaining to the Youth Handgun Safety Act, provided a sign (ATF I 5300.1) and a notification [ATF I 5300.2] to be copied and distributed until additional forms could be ordered;

c). Warned Timothy Backes, Scott Backes and another Shawano employee to carefully review Forms 4473 for completeness, for residency, for age and for responses to item 12 and to not proceed with any firearms transaction if the transferee is disqualified in these areas;

d). Reviewed with Timothy Backes the findings as to the Forms 4473 and informed that he may not accept a P.O. Box as a residence address, that individuals residing on the reservation must identify their residence by number and street and have identification to verify that location, and also instructed Timothy Backes to ensure all Forms 4473 were properly executed and complete at the time of transfer of a firearm.

e). Reminded Timothy Backes that in the previous inspection he was cited for similar inaccuracies in his record of acquisition and disposition, that he must ensure the accurate accounting of firearms and that he should update his record with accurate information, and Mr. Backes did so.

f). Instructed Timothy Backes to make a current hard copy print of the acquisition and disposition record, which he did, and was instructed to ensure this requirement of printing a hard copy of the record was met in the future.

PFF 20.

Licensee [Timothy Backes] was found to be operating with an improper license in that the license had been issued to Timothy Backes as a sole proprietor, but Backes had been operating his business since its inception as a limited liability corporation. PFF 21. Subsequent to the second

10

compliance inspection, Timothy Backes submitted a new application for a license that would accurately reflect his business entity. PFF 22. Shawano Gun & Loan, LLC was licensed as a dealer, including pawnbroker, in firearms other than destructive devices in September 2005. PFF 23. Timothy Backes was at its inception the owner of Shawano Gun & Loan and remains its owner. PFF 24.

### C.  Warning Conference

A letter dated March 11, 2005, from John Jarowski, ATF Director of Industry Operations ("DIO"), was sent to Timothy Backes regarding the second compliance inspection and scheduling a meeting to discuss the violations found. PFF 25.

The letter, in part, states as follows:

> You should be aware that any willful violations of Federal Firearms laws and regulations might result in revocation of your Federal Firearms License . . . [t]he agenda for the meeting will include a discussion of the reasons for the violations, a review of the legal requirements, and a discussion of steps to be taken by you to ensure future compliance. Although we do not believe it necessary, legal counsel may assist you at your own expense if you so choose. Please bring with you documentation verifying the corrective action you have taken.

> The records you are required to maintain and the business operations you conduct are important to law enforcement in our continuing efforts to reduce violent crime and ensure the public's safety. It is essential that you comply with all firearms laws and regulations that govern your Federal Firearms License business.

> We will conduct a follow-up inspection in the future. Any violations, either repeat or otherwise, could be viewed as willful and may result in the revocation of your license.

11

PFF 26.  By letter dated April 2, 2005, Timothy Backes provided a response to ATF regarding the

multiple violations and how he intended to prevent the reported violations from reoccurring.  PFF 27.

A warning conference was held with Timothy Backes on April 19, 2005, where the violations

found during the second compliance inspection and the necessary corrective action to prevent

reoccurrence were discussed.  PFF 28.  As a follow-up to the warning conference, DIO Jarowski sent

a letter to Timothy Backes dated April 21, 2005.  PFF 29.   The April 21, 2005 letter states, in part,

as follows:

> You were given the opportunity to comment on the violations
> and what specific action you have taken to ensure that the violations
> will not recur.  At the conference, you provided a written response
> and corrective action concerning each violation cited.  Specifically in
> regard to violations concerning Forms 4473, you stated each Form
> 4473 is now double checked by a second person before transfer.  You
> also stated you understand the importance of not transferring a firearm
> to a person who has indicated on Form 4473 that they are prohibited
> from receiving a firearm.  In regard to the acquisition / disposition
> record, you stated manager Scott Backes is now overseeing and
> maintaining the record and all entries are timely and properly made.
> You indicated you understood the severity of the violations and would
> work to ensure future compliance.
>
> The violations for which you were cited could adversely impact law
> enforcement's ability to reduce violent crime and protect the public.
> You are reminded that future violations, repeat or otherwise, could be
> viewed as willful and may result in the revocation of your license.
> You may anticipate further inspections to ensure your compliance.
>
> Please contact us if you have any questions concerning your
> responsibilities as a licensee or if you require further clarification
> about particular requirements of Federal Firearms laws.

PFF 30.

### D.    2007 Compliance Inspection

In March 2007, a third compliance inspection was conducted at Shawano by Industry Operations Inspector ("IOI") Mary Jo Holpit which disclosed numerous violations, including repeat violations from the 1999 and 2004 compliance inspections.  PFF 31.

 The third compliance inspection disclosed seven violations as follows:

a).  The licensee had been using the computerized program "Pawnmaster" for the acquisition and disposition record without an approved variance since moving the physical location of the business and changing the license from sole proprietorship to a limited liability corporation.

b).  The licensee' acquisition and disposition record did not accurately reflect the firearms in inventory.  Additionally, the disposition information in some instances reflected only "pick-up" dates on printed information.  The licensee stated he had not printed an acquisition and disposition record in over 9 months.  This was a repeat of violations cited in 1999 and 2004.

c).  The licensee was not providing required Youth Handgun Safety Notice ATF I 5300.2 to purchasers of used handguns or pawn redemption transfers as required by statute.  This was a repeat of a violation found in 2004.

d).  Licensee is less than 1000 feet from a school and located within a school zone.  Licensee was not insuring firearms entering and exiting the premises are contained in lockable containers.

e).  The licensee failed to obtain valid identification in at least four instances. Examples included two instances of no identification, one instance of use of Tribal identification and one instance of a Texas drivers license for a Wisconsin address.  The licensee also had errors

13

involving the expiration date of the identification on approximately 50% of the forms. This was a repeat of a violation found in 2004.

f). The licensee failed to properly execute ATF Forms 4473 and ensure their completion by the transferee. The licensee also contacted the NICS or State Handgun Hotline completing the transfer of the firearms with numerous errors and omissions, including in some instances the purchaser indicating they were prohibited purchasers. This was a repeat of violations found in 1999 and 2004.

g). Shawano knowingly assisted in the use of straw purchasers by altering pawn tickets and reprinting the pawn tickets in the straw purchaser's name. Sales denied by the Handgun Hotline or NICS were followed either the same day or within a few days by straw purchasers residing at the same address as the prohibited persons.

PFF 32.

IOI Holpit notes in her Firearms Inspection Report that owner Timothy Backes and store manager Scott Backes were interviewed during the period of the inspection (PFF 33) and that the licensee has acquired 3,896 firearms and disposed of approximately 2,942 firearms during the period (January 1, 2006, through March 15, 2007). PFF 34.

On March 15, 2007, Timothy Backes signed as owner of Shawano an ATF Report of Violations attesting to the fact that he received a copy of the report of violations. PFF 35. The ATF Report of Violations sets forth the seven violations and the corrective action to be taken. PFF. 36.

In response to not holding a variance under the current federal firearms license to use the "Pawnmaster" computer program as the acquisition and disposition record, on March 7, 2007, Timothy Backes provided IOI Holpit a variance request. PFF 37. Also in response to the violations

14

found during the 2007 compliance inspection, Timothy Backes submitted a letter response to IOI Holpit addressing each of the violations.  PFF 38.

### E.  Notice of Revocation and Administrative Hearing

On October 30, 2007, Mary Jo Hughes, the Director of Industry Operations for St. Paul Field Division, issued a Notice of Revocation of License revoking the federal firearms license of Shawano Gun & Loan, LLC.  PFF 39.  The Notice of Revocation set forth the following willful violations of the Gun Control Act (Title 18, United States Code, Chapter 44) and the regulations issued thereunder:

A.      Count One – Between approximately January 1, 2006 and March 15, 2007, the Licensee willfully disposed of fifty-four (54) firearms to non-licensees and willfully failed to record said disposition in its acquisition and disposition book in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e).  This is a repeat violation from the 1999 and 2004 compliance inspections and the 2005 warning conference.

B.      Count Two – From approximately January 1, 2006 until March 15, 2007, the Licensee willfully failed to complete and correct thirteen (13) Firearms Transaction Records (ATF Forms 4473) relating to the transfer of firearms to non-licensees in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c).  This is a repeat violation from the 1999 and 2004 compliance inspections and the 2005 warning conference.

C.      Count Three – From approximately March 13, 2006 until October 17, 2006, the Licensee willfully made false entries, and aided and abetted the making of false entries by another, in a record to be kept pursuant to Title 18, United States Code, Section 923, in five transactions (straw purchases) in violation of 18 U.S.C. §§ 2, 922(a)(6), 922(m), and 924(a)(1)(A) and 27 C.F.R. § 478.128(b)and (c).

D.      Count Four – Between March 8, 2006 and November 16, 2006, the Licensee in three (3) instances willfully sold or otherwise disposed of a firearm wherein the transferee indicated that he or she was a prohibited person in violation of 18 U.S.C. § 922(d)(9) and 27 C.F.R. § 478.99(c)(9).  This is a repeat violation from the 2004 compliance inspection and the 2005 warning conference.

E.      Count Five – Between August 15, 2006 and November 6, 2006, the Licensee in three (3) instances willfully sold or otherwise disposed of firearms wherein the transferee indicated that they were not the actual purchaser of the firearm in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(a) and (c).

15

PFF 40.

The errors and/or omissions on thirteen (13) ATF Forms 4473 that comprise Count Two in the Notice of Revocation are more specifically set forth as follows:

1. On ATF Form 4473, Transferor's Transaction Serial Number 06-017, Licensee failed to obtain a response to Item 11L (Exh. Gx-27, pp. 108-111);

2. On ATF Form 4473, Transferor's Transaction Serial Number 06-863, Licensee failed to obtain a response to Item 11e (Exh. Gx-28, pp. 112-115);

3. On ATF Form 4473, Transferor's Transaction Serial Number 06-1077, Licensee improperly recorded a Texas driver's license in Item 20a where the Transferee provided a Wisconsin address (Exh. Gx-29, pp. 116-118);

4. On ATF Form 4473, Transferor's Transaction Serial Number 06-1590, Licensee failed to obtain a response to Items 11d, 11g, 11j and 11k (Exh. Gx-30, pp. 119-121);

5. On ATF Form 4473, Transferor's Transaction Serial Number 06-1694, Licensee failed to obtain transferor's/buyer's signature in Item 16 (Exh. Gx-31, pp. 122-124);

6. On ATF Form 4473, Transferor's Transaction Serial Number 06-1739, Licensee failed to obtain a response to Item 11L (Exh. Gx-32, pp. 125-127);

7. On ATF Form 4473, Transferor's Transaction Serial Number 06-1756, Licensee failed to obtain a response to Item 11L (Exh. Gx-33, pp. 128-130);

8. On ATF Form 4473, Transferor's Transaction Serial Number 07-159, Licensee failed to obtain transferor's/buyer's signature and certification date in Items 16 and 17 (Exh. Gx-34, pp. 131-133);

9. On ATF Form 4473, Transferor's Transaction Serial Number 06-2161, Licensee failed to obtain a response to Items 11a and 25 (Exh. Gx-35, pp. 134-137);

10. On ATF Form 4473, Transferor's Transaction Serial Number 07-268, Licensee failed to record type of identification, number on identification and expiration date of identification in Item No. 20a (Exh. Gx-36, pp. 138-140);

11. On ATF Form 4473, Transferor's Transaction Serial Number 07-274, Licensee failed to record the number on identification and expiration date of identification in Item No. 20a (Exh. Gx-37, pp. 141-143);

16

12. On ATF Form 4473, Transferor's Transaction Serial Number 07- 311, Licensee failed to obtain a response to Item 11L (Exh. Gx-38, pp. 144-146); and

13. On ATF Form 4473, Transferor's Transaction Serial Number 07-379, Licensee failed to obtain a response to Item 11a (Exh. Gx-39, pp. 147-149).

PFF 41.

On November 5, 2007, the Notice of Revocation was served upon Shawano Gun & Loan, LLC by certified mail. PFF 42. By letter dated November 16, 2007, Shawano Gun & Loan, LLC by its attorneys timely requested a hearing with respect to the allegations contained in the Notice of Revocation. PFF 43.

On August 7, 2008, the administrative hearing was conducted in Milwaukee, Wisconsin before Hearing Officer Michael Price. PFF 44. The government, by ATF Counsel Thomas Karmgard, presented witness testimony from IOI Casimir Mleczko and IOI Mary Jo Holpit. PFF 45.

IOI Holpit testified that during the 2007 compliance inspection Shawano was not following the computer variance in that the semi-annual acquisition and disposition record had not been printed out (PFF 46) and that there were 54 firearms for which no dispositions were recorded and this comprises the violation at Count One. PFF 47. To document the Count One violation, IOI Holpit only used a sampling of the computerized record; pages 1183 through 1201. PFF 48. There could have been more violations of this nature, but IOI Holpit did not print up additional pages from the record. PFF 49.

The Licensee presented testimony from Shad Lewis, Timothy Backes and Robyn Marthenze. PFF 50. Shad Lewis runs a computer consulting service and holds a computer forensics certification. PFF 51. Shad Lewis testified that after examining the hard drive and computer records at Shawano, he found that the disposition entries of the 54 firearms at issue were made contemporaneously with

17

the actual purchase or pick-up of the firearm, but were not input properly into the computer. PFF 52. According to Shad Lewis, at the time of the 2007 compliance inspection, the disposition record of the 54 firearms was viewable on the computer screen but could not be printed out. PFF 53.

Timothy Backes testified that after the 2007 compliance inspection as to the ATF Forms 4473, he fired one employee and instructed the remaining employees to be more careful and to make sure the forms were completely filled out. PFF 54. Timothy Backes admitted that the Forms 4473 were not accurately filled out, but that did not occur as a result of disrespect or disregard of the ATF rules. PFF 55.

During the hearing, the following exchange occurred between Attorney Karmgard asking the questions and Timothy Backes answering:

> Q:   Now, when you got involved in being a Federally licensed firearms dealer, you knew that it was a highly regulated business?
>
> A:   Yes.
>
> Q:   And would you agree that you're responsible for keeping up on the laws and the regulations?
>
> A:   Yes.
>
> Q:   And as the owner you're the one who is ultimately responsible for making sure that things go right?
>
> A:   Yes.
>
> Q:   And would you agree that as the owner of Shawano Guns you are ultimately responsible for making sure that your business complied with all federal laws and regulations?
>
> A:   Yes.

18

PFF 56. Timothy Backes admitted that he did not review the computer printouts of the acquisition and disposition record and stated that he was compliant because "[e]verything I used was in the computer." PFF 57.

With respect to Count Three, the violations involving alleged straw purchases, Timothy Backes visited four of the five involved individuals and obtained statements from them, each attesting that the purchase was legitimate. PFF 58.

### F.    Hearing Officer Recommendation and Final Notice of Revocation

After the hearing, Hearing Officer Michael Price prepared a Memorandum to the Director of Industry Operations dated August 15, 2008, regarding his Report and Recommendation concerning Shawano Gun & Loan, LLC. PFF 59. The Memorandum includes the following "FINDINGS OF FACT:"

> Count 1– Violation of 18 USC 923(g)(1)(A) and 27 CFR 478.125(e) by failing to properly record the disposition of at least 54 firearms into the A&D record.
>
> The Government has established that this violation occurred through testimony and introduction of Exhibits Gx-21, p. 66, Gx-22, p. 78 and Gx-25, p. 88. The licensee provided credible evidence that there was some sort of data corruption that occurred from some event and that the disposition information was in the computerized system at the time of the inspection. However, the licensee had not made the required printout of the A&D record for some time. IOI Holpit indicated that it may have been 9 months since the A&D record had been printed out. Had the licensee been printing out the A&D record in compliance with the terms of the computer records variance approval, it is more likely than not this problem would have been spotted earlier and steps taken to correct the lack of disposition entries in the printout.
>
> Count 2 – Violation of 18 USC 923(g)(1)(A) and 27 CFR 478.124(c) for failing to obtain complete and correct ATF Forms 4473 on 13 occasions.
>
> The Government has established, through testimony and introduction of Exhibits Gs-21, p. 66, Gx-22, p. 78, and Gx-27 through Gx-39, pages 108 through 149, that this violation occurred. The licensee did not dispute the occurrence of these violations but did attempt to minimize them as clerical errors.

19

Count 3 – Violation of 18 USC 922(a)(6), 922(m) and 924(a)(1)(A) and 27 CFR 478.128(b) and 478.128(c) by willfully making false record entries and aiding and abetting the making of false record entries on five occasions by allowing straw transfers.

Through testimony and introduction of evidence (Exhibits Gx-21, p. 66, Gx-22, p. 78, Gx-40 through 47, pages 150 through 173 and Gx-55-56, pages 195 through 202), the Government has established that the licensee transferred firearms to individuals they had reason to believe were prohibited from possessing such firearms.

The licensee presented evidence, Lx-13, which consists of a series of statement [sic] from four of these five transferees. Mr. Backes interviewed these individuals at the request of Mr. Dall'Osto. Some of these statements seem credible; some do not. However, it remains that **at the time of transfer** the licensee had reason to believe that another person was purchasing or picking up a firearm for another person who was disabled from possessing a firearm and took no extra steps to ensure this would not happen.

Count 4 – Violation of 18 USC 922(d)(9) and 27 CFR 478.99(c) by transferring a firearm(s) to three individuals who indicated on ATF Form 4473 that they were prohibited from possessing firearms.

Through testimony and introduction of evidence, Gx-21, p. 66, Gx-22, p. 78 and Gx-48 through 50, pages 174 through 182, the Government has established this violation.

The licensee stated that all these individuals cleared NICS and that no firearm was transferred to a prohibited person. As the Government noted, it is the licensee's responsibility to review these forms and stop any transaction where there is a reason to believe the transferee is not eligible to receive a firearm. Answering "yes" to question 11-b through 11-1 is certainly a reason to believe the customer is not entitled to possess a firearm.

Count 5 – Violation of 18 USC 923(g)(1)(A) and 27 CFR 478.124(a) and (c) by transferring firearms on three occasions to persons who indicated on ATF Form 4473 that they were not the actual buyer of the firearm(s).

The Government has established this violation through testimony and introduction of evidence – Exhibits Gx-21, p. 66, Gx-22, p. 78 and Gx-51 through 53, pages 183 through 192. The licensee's explanation that people redeeming pawned firearms are often confused by this question, while believable (and all these transactions were pawn redemptions), it is the licensee's responsibility to ensure proper completion of the ATF Form 4473. If the customer is confused, then there is always the opportunity

to change their answer if it is an incorrect answer. By the licensee's own admission, many customers do change their answer to this question.

PFF 60 (emphasis in original).

In the section entitled, "CONCLUSIONS," Hearing Officer Price concludes that the violations were willfully committed in that he found that Timothy Backes, as owner of Shawano Gun & Loan, LLC, was aware of his legal obligations and finds that there was an indifference to becoming personally involved to ensure the corrective action he only directed to be taken actually met the criteria for compliance. PFF 61. In the section entitled, "RECOMMENDATION," Hearing Officer Price recommends that the license issued to Shawano be revoked. PFF 62.

A Final Notice of Denial of Application or Revocation of Firearms License was signed by Mary Jo Hughes, Director of Industry Operations, on December 18, 2008. PFF 63. The DIO revoked the license of Shawano on the basis of the five violations as originally set forth in the Notice of Revocation . PFF 64.

The DIO concludes in the Final Notice "that the record in the case demonstrates that the Licensee is familiar with the record keeping and other requirements imposed on a Federal firearms license . . .[and] the record demonstrates that the Licensee has been plainly indifferent to, and in some instances has acted in purposeful disregard of, these record keeping and other requirements." PFF 65.

## II.    LAW AND ARGUMENT

### A.    Standard of Review and Applicable Law

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

21

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, the moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-325 (1986). The moving party need not present evidence, and need only point out the lack of any genuine dispute as to material fact. *Id.* A fact is material if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The non-movant then bears the burden of establishing the existence of elements essential to its case, which it would have to prove at trial, and may not rest upon the mere allegations or denials of the adverse party's pleading. Once the moving party satisfies this burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Oriental Health Spa v. City of Fort Wayne,* 864 F.2d 486, 488 (7th Cir. 1988). It is insufficient for the nonmoving party merely to show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd.,* 475 U.S. at 587. Tangential issues not relevant to the determination of the case are not material, and disputes as to such issues are insignificant for summary judgment purposes. *Oriental Health Spa,* 864 F.2d at 488.

This case is an appeal of ATF's decision to revoke Shawano's federal firearms license. Pursuant to 18 U.S.C. § 923(f)(3), one whose license has been revoked may "[f]ile a petition with the United States district court . . . for a de novo judicial review of [the] revocation." In the judicial review, the court has the discretion to "consider any evidence submitted by the parties" regardless of whether the evidence was considered in the hearing below. 18 U.S.C. § 923(f)(3). The district court may attach the weight, if any, that it considers appropriate to ATF's factual determination and decision. *See, e.g., Stein's, Inc. v. Blumenthal,* 649 F.2d 463, 467 (7th Cir. 1980); *Willingham Sports,*

22

*Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives,* 348 F. Supp.2d 1299, 1306 (S.D. Ala. 2004), *aff'd*, 415 F.3d 1274 (11th Cir. 2005).

The right of *de novo* judicial review in the GCA does not provide a firearms dealer with an absolute right to an evidentiary hearing, but only an opportunity to present additional evidence regardless of whether that evidence was presented at the administrative level. *Willingham Sports,* 348 F. Supp.2d at 1306; *Benjamin v. Bureau of Alcohol, Tobacco, and Firearms,* 771 F.Supp. 307, 309-310 (D. Or. 1991) ("[w]hile 18 U.S.C. § 923(f)(3) provides that the court may consider evidence not part of the administrative record, there is no requirement that the court conduct an additional factual hearing"); *Breit & Johnson Sporting Goods, Inc. v. Ashcroft,* 320 F.Supp.2d 671, 673 (N.D. Ill. 2004). This evidence may come in the form of an affidavit on summary judgment rather than testimony at an evidentiary hearing if no substantial credibility questions are presented. *Willingham,* 348 F.Supp.2d at 1306 (citing *Stein's,* 649 F.2d at 466 n.5).

When a plaintiff fails to come forward with genuine issues of material fact, it is unnecessary to hold an evidentiary hearing before ruling on a summary judgment motion. *Cucchiara v. Secretary of the Treasury,* 652 F.2d 28, 29-30 (9th Cir. 1981), *cert. denied*, 455 U.S. 948 (1982); *Breit & Johnson,* 320 F. Supp.2d at 673; *3 Bridges, Inc. v. United States,* 216 F. Supp.2d 655, 657 (E.D. Ky 2002). Thus, summary judgment may be appropriate upon *de novo* review on the basis of the administrative record when no substantial reason to receive additional evidence is present and when "material facts developed at the administrative hearing . . . are not substantially drawn into question by the party petitioning for review." *3 Bridges,* 216 F. Supp.2d at 657 (quoting *Cucchiara,* 652 F.2d at 30). Indeed, judicial economy suggests trial anew of factual matters already developed in administrative proceedings should be avoided unless substantial doubt infects the agency's findings

23

of fact. *See e.g., Steins,* 649 F.2d at 466; *Perri v. Department of Treasury; Bureau of Alcohol, Tobacco and Firearms,* 637 F.2d 1332, 1335 (9th Cir. 1981).

Pursuant to 18 U.S.C. § 923(e), the Government may revoke a federal firearms license if the holder of the license has "willfully" violated any provisions of the GCA or its implementing rules and regulations. The majority of circuits, including the Seventh Circuit, have consistently held that where a licensee knew of his legal obligations under the GCA yet purposely disregarded or was plainly indifferent to the record keeping requirements, his license can be denied or revoked on the basis that the dealer "willfully" violated the GCA. *Article II Gun Shop, Inc. v. Gonzales,* 441 F.3d 492, 497 (7th Cir. 2006). Willfully does not require any proof of bad intent or evil motive. *Id*; *Stein's,* 649 F.2d at 467. If a licensee "acts with careless disregard of statutory requirements, the violation is willful." *Goodman v. Benson,* 286 F.2d 896, 898 (7th Cir. 1961); *Trader Vic's Ltd. v. O'Neill,* 169 F.Supp.2d 957, 965 (N.D. Ind. 2001) ("a federal firearms licensee . . . [has] a duty to be cognizant of the rules and regulations issued by the Bureau of Alcohol, Tobacco and Firearms and to follow those mandates."). For revocation of a license, the appropriate standard for willfulness is "purposeful disregard" of, or plain indifference to, a known legal obligation. *Article II Gun Shop,* 441 F.3d at 496. A firearms licensee's "repeated violations after it has been informed of the regulations and warned of violations does show purposeful disregard or plain indifference," for purposes of determining whether such violations are willful. *Willingham,* 415 F.3d at 1277; *accord Appalachian Resources Development Corp. v. McCabe,* 387 F.3d 461, 464 (6th Cir. 2004) (affirming district court's conclusion that violations of firearm regulations were "willful" because the dealer had knowledge of its obligations under the GCA and repeatedly violated them). Where the licensee is a business entity, as in this case, it is charged with the conduct and knowledge of its employees. *See*

24

*e.g., Fin & Feather Sport Shop, Inc. v. U.S. Treasury Department,* 481 F. Supp. 800, 807 (D. Neb. 1979); *McLemore v. U.S. Treasury Department,* 317 F. Supp. 1077, 1078-79 (N.D. Fla. 1970).

A single violation of the GCA or its implementing rules and regulations can be a basis for ATF to revoke a firearms license. *See Appalachian Resources Development Corp.,* 387 F.3d at 464; *Breit & Johnson,* 320 F. Supp.2d at 678. Nor does the GCA allow any *de minimus* number of violations. *Article II Gun Shop,* 441 F.3d at 498. Evidence of repeated violations with knowledge of the laws requirements has been held sufficient to establish willfulness. *Id.* (citing *Stein's,* 649 F.2d at 468).

One key purpose of the GCA is "to keep firearms from persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States,* 423 U.S. 212, 218 (1976). Shawano's repeated failure to ensure that Forms 4473 were properly completed – and its repeated failure to stop transactions that were prohibited based upon the prospective transferee's response– interferes with this purpose. *See 3 Bridges,* 216 F. Supp.2d at 659. Further the GCA's revocation provision applies regardless of whether a firearms dealer's failure to comply with the GCA actually results in illegal possession or usage of a firearm or an inability to track a firearm that has been sold. *Article II Gun Shop,* 441 F.3d at 498.

> **B.    Summary Judgment is Required in This Case Because the Undisputed Material Facts Show that Shawano Willfully Violated the Licensing Provisions of the Gun Control Act Because it Understood its Legal Obligations and Yet Failed to Abide by the Law.**

Shawano Gun & Loan, LLC, by its owner Timothy Backes, willfully violated the Gun Control Act and the Code of Federal Regulations governing firearms licensees.

25

There can be no factual dispute that each of the five violations occurred as cited in the Report of Violations pertaining to the 2007 Compliance Inspection. Count one charged that the Licensee failed to properly record the disposition of at least 54 firearms into the A&D Record. The Licensee provided evidence that the disposition information was in fact stored within the computer system, but could not be accessed and printed out at the time of the 2007 compliance inspection. This explanation however only goes so far. The computer variance granted to Shawano required that the Licensee prepare a printout of all A&D records at least semi-annually and upon request of an ATF officer and that the computer printout contain all firearms in inventory as well as all those sold during the period covered. At the time of the 2007 compliance inspection, Shawano had failed to prepare a printout at least semi-annually and when requested to print out all of the A&D records, the printed records were missing the disposition information of at least 54 firearms. As noted within the August 15, 2008 Memorandum of Hearing Officer Price, "had the licensee been printing out the A&D record in compliance with the terms of the computer variance approval, it is more likely than not this problem would have been spotted earlier and steps taken to correct the lack of disposition entries on the printout." (Docket #16, Memorandum to Director of Industry Operations, dated August 15, 2008, p. 26; PFF 60).

Count two charged violations of failing to obtain complete and correct ATF Forms 4473 on thirteen (13) occasions. These particular Forms 4437 are contained at Exhibits Gx-27 through 39 and the record shows that during the administrative hearing Timothy Backes did not dispute the occurrence of these violations.

Count three charged violations of willfully making false record entries and aiding and abetting the making of false record entries on five occasions by allowing straw transfers. Mr. Backes denies

26

making any straw transfers and obtained a series of statements from four of the five transferees; each transferee stating that the sale was legitimate. Yet, the factual circumstances surrounding each transfer form a sufficient basis to conclude that at the time of transfer of the firearm the licensee had reason to believe that another person was purchasing or picking up a firearm for another person who was prohibited from possessing a firearm and took no extra steps to ensure this would not happen.[8] Further, while Mr. Backes may fully believe each of the individuals that he spoke to, it remains evident that an individual would not likely ever admit knowingly purchasing and then providing a firearm to a prohibited person as that individual would be admitting to having committed a felony.

Count four charges violations of alleged sales or transfers to three persons who indicated they were prohibited persons. Timothy Backes does not appear to dispute that these sales occurred, but counters that all these individuals cleared NICS and that no firearm was transferred to a prohibited person. However, the fact remains that a transaction is to be stopped if there is reason to believe that the transferee is not eligible to receive a firearm and answering "yes" to questions 11-b through 11-L should provide such a basis to the licensee to stop a transaction. (See PFF 60).

Count five charges violations of transferring firearms on three occasions to persons who indicated on ATF Forms 4473 that they were not the actual buyer of the firearm(s). Mr. Backes seemingly does not dispute this violation, but offers the explanation that people redeeming pawned firearms are often confused by this question on the form. Yet, it is the licensee's responsibility to ensure proper completion of the ATF Form 4473 and providing further explanation to the customer

---

[8]The five alleged straw transfers are documented in Exhibits as follows: 1) First alleged straw transfer– Exh. Gx-40, p. 150 and Gx-41, p. 153; 2) Second alleged straw transfer – Exh. Gx-42, p. 156 and Gx-43, p. 159; 3) Third alleged straw transfer – Exh. Gx-44, p. 162 and Gx-45, p.165; 4) Fourth alleged straw transfer – Exh. Gx-46, p.168 and Gx-47, p. 171; and 5) Fifth alleged straw transfer – Exh. Gx-55, p. 195 and Gx-56, p. 198).

could cure any confusion and may cause the customer to legitimately change his/her answer to this question. (*See* PFF 60).

With little to no dispute regarding whether in fact the violations occurred and mindful that the law provides that a single violation is sufficient for denying an application or revoking a license, the question in this *de novo* review is whether Shawano willfully violated the Gun Control Act and its attendant regulations. The answer is assuredly and overwhelmingly "yes." As noted herein, courts have held that the government need only prove that the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements in order to demonstrate a willful violation. *See Stein's Inc.,* 649 F.2d at 467. Equally important in this instance for determining whether a violation is willful, is that a firearms licensee's repeated violations after it has been informed of the regulations and warned of the violations shows purposeful disregard or plain indifference. *See Willingham Sports,* 415 F.3d at 1277.

Timothy Backes, as owner of Shawano Gun & Loan, LLC, was involved in the 1998 application inspection, a 1999 compliance inspection, a 2004 compliance inspection and a 2005 warning conference and the 2007 compliance inspection. In each instance, after an inspection, Timothy Backes was informed of the problems and what needed to be done to correct them. At the 2005 warning conference, Mr. Backes provided a written response and corrective action concerning each violation as cited in the 2004 compliance inspection. Mr. Backes indicated he understood the severity of the violations and would work to ensure future compliance. Mr. Backes even provided a specific plan and procedure to address the violations on Forms 4473. Tellingly, Mr. Backes was reminded that future violations, repeat or otherwise, could be viewed as willful and may result in the revocation of his license. Mr. Backes was also invited to contact ATF regarding any questions

28

concerning his responsibilities as a licensee or if he required further clarification about particular requirements of Federal Firearms laws.

From the time of the 2005 warning conference until the March 2007 compliance inspection, Mr. Backes had ample time and opportunity to put his plan into place to ensure future compliance. However, the violations found during the 2007 compliance inspection include repeat violations from previous inspections and therefore provide evidence of purposeful disregard or plain indifference to the recordkeeping requirements. Hearing Officer Price comments in his August 15, 2008 Memorandum as follows:

> at no time during his [Timothy Backes] testimony did I hear Mr. Backes state that he took an active interest in personally monitoring the actions of his employees. Seemingly to the contrary, I did hear that he was not always present and seemed to delegate operational responsibility to his nephew, Scott Backes. He did advise his employees to make the necessary corrective changes. However, he does not seem to have personally ensured that these changes were being implemented.
>
> Now we come to the June 2007 inspection that documents significant, similar violations. Even Mr. Backes stated that he is not surprised to be sitting in a revocation hearing after these inspection results. That he expected a better result is understandable. That he did not seem to take a direct, active interest in ensuring corrective action was implemented is not understandable, especially seeing that he understood how serious the situation was after the 2004 inspection and subsequent warning conference.

(Docket #6, Memorandum to Director of Industry Operations, dated August 15, 2008, p. 28).

At the hearing, Mr. Backes spoke at length about the processes and procedures he now has in place to ensure future compliance. Mr. Backes sets forth much of the same in his petition for review. (Docket # 1). However, any evidence of subsequent reformation of business practices to bring the licensee into compliance with federal firearms laws and regulations is not probative as to whether the violations were willful because (a) the GCA (and its regulations) focuses on willfulness

at the time the violations occurred; and (b) consideration of corrective action taken subsequent to the violation would prevent revocation simply by coming into compliance before judicial review. *Willingham,* 348 F. Supp.2d at 1311; *T.T. Salvage Auction Co., Inc. v. Secretary, U.S. Dept. Treasury,* 859 F. Supp. 977, 979 (E.D.N.C. 1994).

These repeat violations provide a sufficient basis to establish that Shawano by its owner Timothy Backes willfully violated the GCA because of its knowledge of the law as established by the prior inspections, warning letter and conference, and its plain indifference to the law as shown by the repeated and serious violations. *See Appalachian Resources,* 387 F.3d at 464; *Cucchiara,* 652 F.2d at 30. Therefore, its license is subject to revocation.

### III.     CONCLUSION

Because the undisputed material facts show that Shawano Gun & Loan, LLC was aware of its legal obligations and yet was plainly indifferent or purposefully disregarded them, its violations of the GCA were willful and ATF properly revoked its firearms license. Therefore, this Court should grant ATF's motion for summary judgment and ATF's revocation of Shawano's firearms license should be upheld.

Dated at Milwaukee, Wisconsin, this 21st day of January, 2010.

JAMES L. SANTELLE
United States Attorney

By:     /s Lisa T. Warwick

LISA T. WARWICK
Assistant United States Attorney
State Bar # 1017754
Attorney for Respondent
530 Federal Courthouse
517 E. Wisconsin Avenue

30

Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297- 4394
E-mail: lisa.warwick@usdoj.gov

Agency Counsel:
Patricia R. Cangemi
Division Counsel, St. Paul Field Division
Bureau of Alcohol, Tobacco, Firearms and Explosives
St. Paul, MN 55101