UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAWANO GUN & LOAN, LLC
d/b/a SHAWANO GUN & LOAN,

       Petitioner,

v.

       Case No. 09-C-150

MARY JO HUGHES, Director of Industry
Operations, Bureau of Alcohol, Tobacco,
Firearms and Explosives,

       Respondent.

## DECISION AND ORDER

Petitioner, Shawano Gun & Loan, LLC, d/b/a Shawano Gun & Loan LLC (hereinafter "Shawano") commenced this action for a *de novo* review of the decision of the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF") to revoke Shawano's federal firearm sales license. Respondent Mary Jo Hughes, Director of Industry Operations, ATF now seeks summary judgment. For the reasons that follow, Respondent's motion will be granted.

**I. BACKGROUND**

In 1998 Timothy Backes received a federal firearms license. (ATF Mem., Dkt. 22 at 1.) Backes opened Shawano Gun, a pawn shop business that also sells firearms. (Shawano Resp., Dkt. 32 at 14.) Backes met with an ATF agent who provided him with packets of relevant forms that were to be completed for all gun sales, including the Form 4473 Firearms Transaction Record. (*Id.* at 15.) ATF Agent James Jewell advised Backes, in writing, of the federal record keeping requirements to which he needed to adhere. (ATF Mem., Dkt. 22 at 2.) The general record keeping

provisions of the Gun Control Act of 1968, 18 U.S.C. § 921 *et. seq.* ("GCA"), are located at 18 U.S.C. § 923 (g) and its implementing regulations at 27 C.F.R. Part 478 (formerly Part 178). Gun dealers must ensure that a Firearm Transaction Record, ATF Form 4473, is properly completed to record identifying information about firearm purchasers. (*Id.* at 3.) This is done to facilitate the tracing of firearms involved in crimes and to prevent transfers to persons who are prohibited from possessing firearms. (Shawano Resp., Dkt. 32 at 5.).

### A. Requirements Under the GCA

ATF Form 4473 has four parts. The prospective firearm purchaser completes Section A of the form, which includes basic biographical information as well as answers to key questions such as "Have you been convicted of a felony?" and "Are you the actual buyer of the firearm(s) listed on this form?". Sections B and C of Form 4473 require listing of the identification documents produced by the prospective purchaser. This identification information is used as part of the National Instant Background Check System ("NICS") that must be completed prior to a firearm transfer. Finally Part D of Form 4473 provides space to detail the type and serial number of the specific firearm to be transferred. (*Id.* at 5-6.)

In addition to completing Form 4473 for each gun transfer, firearm dealers must also maintain a book with entries for each firearm that leaves its inventory. 27 C.F.R. §178.125(e). The ATF granted Shawano permission to use a computer to log the firearm acquisitions and dispositions provided that Shawano printed out the records on a semi-annual basis.

### B. ATF Compliance Investigations of Shawano

In 1999 the ATF conducted a compliance investigation of Shawano. (ATF Proposed Findings of Fact, Dkt. 23 at 3.) The inspection disclosed nine compliance violations including,

2

among others, failure to properly maintain a book record, failure to timely record disposition entries in at least 145 instances, and failure to properly record firearm model and serial numbers into the log book on at least 23 instances. (*Id.* at 3-4.)

In 2004 AFT conducted another inspection of Shawano which disclosed six GCA violations including failure to print a semi-annual hard copy of his computer receipt/disposition record, failure to maintain an accurate record of receipt and disposition in 36 instances, and seven instances where Shawano had transferred firearms to individuals who had indicated they were prohibited from purchasing firearms on Form 4473. (ATF Mem., Dkt. 22 at 7-9.)

On April 19, 2005 ATF held a warning conference with Shawano regarding the recent violations. (ATF Mem., Dkt. 22 at 12.) During this meeting the parties discussed the inspection, the violations, and the necessary corrective action to prevent recurrence. (*Id.*) ATF sent a follow-up letter confirming that Shawano "understood the severity of the violations and would work to ensure future compliance." (*Id.*)

In March of 2007 ATF conduced a third inspection of Shawano. This inspection disclosed seven GCA violations. (*Id* at 13.) ATF found that Shawano had repeated several violations that Shawano was warned about from the prior 1999 and 2004 inspections. (*Id.*) The 2007 violations included sale of firearms less than 1000 feet from a school, failure to obtain proper identification, failure to maintain an accurate acquisition and disposition log, and transferring firearms to individuals who indicated they were prohibited purchasers. In addition ATF noted that Shawano knowingly assisted in the use of straw purchasers by altering pawn tickets. (*Id* at 14.)

In November of 2007 ATF served a Notice of Revocation on Shawano. On August 7, 2008 ATF and Shawano attended an administrative hearing. After considering testimony from five

3

witnesses and numerous exhibits, the Hearing Officer concluded that Shawano willfully violated the GCA and recommended that Shawano's license be revoked. (*Id* at 21.) On December 18, 2008 AFT revoked Shawano's license. (ATF Mem., Dkt. 22 at 21.)

**II. APPLICABLE LAW**

    **A. Standard of Review**

This case is an appeal from the ATF's decision to revoke Shawano's firearms license. The right to appeal this administrative decision to federal court is governed by 18 U.S.C. § 923(f)(3), which provides that one whose license has been revoked or whose application has been denied may file a petition with the United States district court.

Shawano is entitled to a *de novo* judicial review of the ATF's decision in federal district court. Case law makes clear that the *de novo* standard of review means that the ATF's decision is entitled to no presumption of correctness and that the district court may attach such weight, if any, as it deems appropriate to the ATF's determinations and decision. *See, e.g., Stein's, Inc. v. Blumenthal,* 649 F.2d 463, 467 (7th Cir. 1980) (explaining that under *de novo* standard of review in firearm licensing cases, "the trial court need not accord any particular weight to the Secretary's findings and decision," but that "it may, in the exercise of its discretion, accord them such weight as it believes they deserve").

    **B. Summary Judgment**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp.*

4

Case 2:09-cv-00150-WCG    Filed 08/02/10    Page 4 of 12    Document 39

*v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. Despite the posture of this action as an appeal from an ATF administrative decision, the summary judgment standard is unchanged.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

### C. Willful Violations Under the GCA

Congress designed the GCA, in part, to "to keep firearms from persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976). The Government may revoke a federal firearms license if the holder of the license has "willfully" violated any provision of the GCA or its implementing rules and regulations. 18 U.S.C. § 923(e) Willfulness is a prerequisite to the ATF's revocation authority. The Seventh Circuit has held that a licensee's violation is "willful" if the licensee "knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements." *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 487 (7th Cir. 2006). Bad purpose or evil motive need not be shown to establish a "willful" violation. *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980). Other courts have applied the same "willful" standard. *See Red's Trading Post v. Van Loan*, 2008 WL 216611 (D. Idaho, Jan.24, 2008) (citing *Perry v. Dept. of the Treasury*, 637 F.2d 1332, 1336 (9th

5

Cir. 1981) (holding that a willful violation is "established when a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them").

## III. ANALYSIS

Shawano admits it violated the GCA but argues that the violations were not willful. This Court analyzes each of the five counts against Shawano that the parties have addressed in their briefs.

### A. Count #1

The first count charges that, in 2006 and 2007, Shawano failed to properly record the disposition of at least 54 firearms in the acquisition and disposition record. ATF previously cited Shawano for similar violations in 1999 and 2004. (ATF Mem., Dkt. 22 at 15.) It is undisputed that in 2007 Shawano failed to print out the acquisition and disposition log at the six month interval as required. (Shawano Resp., Dkt. 32 at 8.) When, at the nine-month mark, an ATF agent asked Shawano to print out the acquisition and disposition record, Shawano found that 54 firearm dispositions were missing. (*Id.* at 9.) For the purposes of this motion, this Court accepts Shawano's explanation that the 54 transmissions did not show up on the acquisition and disposition record due to a software error. (*Id.*) Nevertheless, Shawano's failure to actually print out the record at the six-month mark is inexcusable. Without a printout law enforcement agents are left to rely on firearm vendors' computers and software that may or may not work and that could crash, be stolen, or damaged. Regardless of the software error, Shawano is ultimately responsible for maintaining proper records. By not double checking the acquisition and disposition record and by not printing

6

the record, especially considering that it had previously been cited for similar violations, Shawano demonstrated plain indifference to the record-keeping requirements of the GCA.

### B. Count #2

Count two charges Shawano failed to obtain complete and correct responses to questions on ATF Forms 4473 on thirteen separate occasions. The record shows that during the administrative hearing Timothy Backes did not dispute these violations occurred. (Shawano Resp., Dkt. 32 at 11.) Shawano was required to verify the firearm purchaser's home address through a form of photo identification. One of the thirteen violations occurred when Shawano allowed a firearm purchaser to list a Wisconsin address even though the purchaser only produced a Texas driver's license. (Trans. p.108.) Other purchasers failed to answer questions and failed to sign the Form certifying their answers. Shawano ignored these incomplete responses allowing these individuals to purchase firearms. The thirteen failures to obtain complete and correct responses related to Count #2 occurred in 2006 and 2007. These were repeat violations because ATF agents had noted the same violations in the 1999 and 2004 compliance inspections. (ATF Mem., Dkt 22. at 15.) This pattern shows plain indifference to the record-keeping requirements of the GCA.

### C. Count #3

The third count charges that Shawano willfully made false record entries and aided and abetted the making of false record entries on five occasions by allowing "straw transfers" of firearms. Shawano produced affidavits from four of the gun purchasers indicating that they bought the guns for themselves. (Shawano Resp., Dkt. 32 at 11.) Shawano's owner, Tim Backes, obtained these affidavits during the pendency of the licence revocation process. This Court takes the four affidavits at face value and assumes that the purchasers did, in fact, buy the firearms for themselves.

7

*See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). Nevertheless, while the affidavits do undercut any implication that firearms ended up in the wrong hands, they do not affect the conclusion that at the time of transfer Shawano had reason to believe that another person was purchasing or picking up the firearm for another person. For example a customer, Matthew Hylok, attempted to purchase a firearm on May 19, 2006 (Trans.p 117.) He indicated that he had been convicted of a misdemeanor crime of domestic violence but later changed his answer. After an NICS check, Shawano properly denied his request to purchase a firearm. (*Id.*) The very next transaction, on the same day, Shawano sold a shotgun to a Gabriel Hylok who gave the exact same address as Matthew Hylok. (*Id.*) ATF Agent Holpit noted that this should have raised red flags for Shawano as it indicates that Gabriel was purchasing the shotgun for Matt, whose application had just been denied. (*Id.*) This same pattern occurred when Jill Martin purchased a Beretta pistol and a Remington Rifle the day after Shawano denied Darwin Martin's application. (*Id.* at 121) Notably Darwin and Jill Martin provided the exact same address. Based on these facts Shawano had reason to believe that firearms were being purchased for individuals who were themselves prohibited from purchasing firearms. Both the Martin and Hylok firearm sales occurred in 2006. An ATF agent had just warned Tim Backes and two Shawano employees about "straw purchases" during the 2004 compliance conference. (ATF Mem., Dkt. 22 at 9). These purchases demonstrate Shawano's willful violation of the GCA; by allowing these firearm transfers to proceed Shawano purposefully disregarded or was plainly indifferent to firearm transfer regulations.

### D. Count #4

This count alleges that Shawano transferred firearms to individuals who indicated on Form 4473 that they were prohibited persons. Shawano "does not dispute that these sales took place."

8

(Shawano Resp., Dkt. 32 at 11.) but argues that the violations were not willful. One of the transactions involved a firearm purchaser named Travis Anderson who answered "yes" to the Form 4473 question "Are you a fugitive from justice?". (Trans. p.124.) Despite this answer Shawano sold Mr. Anderson a Yugoslavian SKF long gun. (*Id.*) After reviewing this "yes" answer Shawano should have terminated the potential sale and should never have called NCIS on Mr. Anderson's behalf. Shawano's argument that Mr. Anderson did receive NICS clearance misses the point that Shawano should never have even reached the step of checking with NICS on behalf of a purchaser who self-identified as a "fugitive from justice." Another example of Shawano's indifference to GCA regulations occurred when Shawano sold a shotgun to a different individual who stated that he had been "convicted of a misdemeanor domestic crime of violence" on Form 4473. (*Id.* at 127.) This conduct indicates that Shawano willfully disregarded GCA regulations.

### E. Count #5

This count charges that Shawano willfully sold or otherwise disposed of firearms where the transferee indicated that he/she was not the actual purchaser of the firearm. For example Shawano sold two firearms, a Winchester Model 94 and a Ruger 1022, to a customer who indicated in block 11A of Form 4473 that she was not the actual buyer of the firearms. (Trans. p.129-130.) Shawano does not dispute that the sales occurred. (Shawano Resp., Dkt. 32 at 12.) Instead Shawano argues that customers are often confused by the forms and that his actions were not willful. (*Id.*) When an ATF agent confronted Shawano about these sales, Tim Backes claimed he was shocked. (Trans. p.130.) Mr. Backes also admitted that the previous ATF inspection had cited him for the identical types of violations. (*Id.*) Shawano concedes that it is his "ultimate responsibility to ensure proper completion of the ATF Form 4473". (*Id.*) This pattern shows that Shawano was plainly indifferent to the record-keeping requirements of the GCA.

9

### F. Willfulness

This Court considers the repetitive nature of Shawano's violations indicative of "willful" conduct. A firearm licensee's "repeated violations after it has been informed of the regulations and warned of the violations does show purposeful disregard or plain indifference," and can be considered in determining whether such violations are willful. *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 348 F. Supp. 2d 1299, 1310 (S.D. Ala. 2004), *aff'd* 415 F.3d 1274 (11th Cir. 2005). Here Shawano had nine violations in 1999, six violations in 2004, and seven violations in 2007. (ATF Mem., Dkt. 22 at 6-15.) Shawano received warning letters from the ATF. Shawano and ATF had face to face meetings to discuss the violations and how to prevent them from happening again. Despite these efforts at compliance and cooperation Shawano continued to violate the GCA. The reasoning in *Best Loan Company v. Herbert*, 601 F. Supp.2d 749 (E.D. Va. 2009) is persuasive on this point. *Best Loan Company*, 601 F. Supp.2d at 752. In *Best Loan*, the court concluded that a firearm dealer's violations were willful and noted the "repeated violations" and the fact that the dealer had been "informed of the regulation, warned of its offenses and afforded additional opportunities by ATF to come into compliance". (*Id*. at 755)

Shawano infers that his employees were to blame for "paperwork discrepancies" and that Shawano terminated one employee and threatened to fire others who were not careful with the ATF forms. (Shawano Resp., Dkt. 32 at 13.) Nevertheless, Timothy Backes agreed that as Shawano's owner he was "ultimately responsible for making sure that things go right" and for complying "with all federal laws and regulations." (ATF Mem., Dkt. 22 at 18.) Shifting the blame to employees is improper in light of the serious, potentially dangerous, and repeated nature of Shawano's violations.

10

Firearm dealers must adhere to the GCA responsibly in order to continue enjoy the business opportunity afforded by a federal firearms license.

Shawano argues that revocation of a firearms license for "inadvertent errors or technical mistakes" is improper because such mistakes and errors were not willful. (Shawano Resp., Dkt. 32 at 27) and references the dissenting opinion in *Article II Gun Shop*, 441 F.3d at 499, which states "the entire willfulness inquiry of section 923(e) illustrates that this is not a strict liability situation, and, thus, cases built upon nothing more than repeated violations should not automatically result in revocation at the summary judgement stage." Even if this dissenting opinion were the law–which it is not–Shawano's violations rise above inadvertent errors or technical mistakes. Allowing an individual who indicates he is a "fugitive from justice" to purchase a firearm is not an inadvertent error. Allowing individuals who fail to answer important background check questions on Form 4473 is not a technical mistake, especially where Shawano was warned, counseled, and cited for these same violations.

Shawano's "no harm, no foul" argument--that there is no evidence on this record that firearms sold by Shawano actually ended up in the wrong hands--misses the mark. An overarching purpose of the GCA is to protect the public by ensuring that federally licensed gun dealers carefully follow the rules. The point is not to punish firearms dealers for violations, but rather to protect the public from firearms ending up in the wrong hands, which can easily happen where a licensed dealer repeatedly demonstrates plain indifference to the GCA requirements. In sum, the business opportunity afforded by a federal firearms license is a privilege, not a right. With that privilege comes a responsibility to adhere to the GCA rules and regulations. Time and time again Shawano showed plain indifference to that responsibility and to the GCA rules and regulations.

11

Similarly, Shawano's argument that the purpose of the GCA, and the implementing regulations as administered by the ATF, is really to ensure "compliance and cooperation" (Shawano Resp., Dkt. 32 at 13.) is unpersuasive where, as here, Shawano has multiple repeat violations. The threat of a license revocation is empty if the ATF's authority is limited to warning letters and hearings. Shawano had multiple opportunities to make business changes to ensure compliance with the GCA. Shawano clearly knew his legal compliance obligation, especially as it related to repeat violations about which he received written warnings. This record supports only one conclusion: Shawano purposefully disregarded or was plainly indifferent to the record-keeping requirements.

## IV. CONCLUSION

Shawano repeatedly violated the GCA between 1999 and 2007. Shawano concedes that violations did, in fact, occur. Therefore, because there is no dispute as to whether violations occurred, and because this Court holds that the violations were willful, there are no genuine issues of material fact. For all of the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. 21) is **GRANTED** in its entirety. The ATF's final administrative decision entered on December 18, 2008, revoking Shawano's firearms dealer license is hereby **AFFIRMED**. The Clerk is directed to enter judgment.

**SO ORDERED** this  30th  day of July, 2010.

BY THE COURT:
 s/ William C. Griesbach
William C. Griesbach
U.S. District Judge